UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXANDER ASSOC., INC.,

    Plaintiff,

v.

PARKWAY PRODUCTS, LLC,

    Defendant.

_____/

Case No. 17-cv-10462
Hon. Matthew F. Leitman

**<u>ORDER DENYING DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT (ECF #15)</u>**

In this action, Plaintiff Alexander Associates Inc. alleges that Defendant Parkway Products LLC has failed to pay commissions due and owing under the parties' sales representative agreement (the "Agreement"). (*See* Am. Compl., ECF #14.) Parkway has now moved to dismiss Alexander Associates' Amended Complaint. (*See* Mot. to Dismiss, ECF #15.) For the reasons explained below, the motion is **DENIED**.

**I**

**A**

On or about June 2, 2010, Parkway and Alexander Associates entered into the Agreement. (*See* Am. Compl. at ¶6, ECF #14 at Pg. ID 159; Agreement, ECF #14-2.) The Agreement called for Alexander Associates "to sell and promote the sales of products of PARKWAY." (Agreement at §1, ECF #14-2 at Pg. ID 170.) In

1

exchange, Parkway agreed to pay sales commissions to Alexander Associates at a rate of 5% of the net invoice price on all shipments of products to the customers identified in the Agreement. (*See* Am. Compl. at ¶7, ECF #14 at Pg. ID 159; Agreement at §4, ECF #14-2 at Pg. ID 171.)

Section 10 of the Agreement governs the commissions to be paid to Alexander Associates upon termination. That section provides that Alexander Associates is entitled to commissions on all "orders" calling for shipment that are dated prior to termination and shipped within 36 months of the termination date:

> **Rights upon Termination**: Upon termination of this agreement for any reasons, REPRESENTATIVE shall be entitled to commissions, as defined in section 4 and pursuant to section 5 of this agreement, on all orders calling for shipment to REPRESENTATIVE customers, or customer's designated "ship to" location, that are dated prior to the effective date of termination and shipped to said customers within thirty-six (36) months of the date of termination commencing with the start of full production. Any RFQ/quotation meeting the compensation criteria set forth in section 4 of this agreement initiated by REPRESENTATIVE that results in an order within twelve (12) months following termination date would be subject to the general post termination commission.

(Agreement at §10, ECF #14-2 at Pg. ID 174.)

The Agreement further defines the term "order" as follows:

> **"Order"** shall mean any commitment to purchase PARKWAY's products which calls for shipment to REPRESENTATIVE's customers or which is subject to commission in accordance with this Section 5.

(*See id.* at §5(e), Pg. ID 171.)

2

On or about September 6, 2016, Parkway gave Alexander Associates written notice that it (Parkway) was terminating the Agreement. (*See* Am. Compl. at ¶16, ECF #14 at Pg. ID 162.) The termination became effective 30 days later. (*See* Agreement at §9(a), ECF #14-2 at Pg. ID 174.)

Thereafter, a dispute arose between the parties concerning whether Parkway was fulfilling its obligations to pay post-termination commissions. Alexander Associates contends that Parkway is not paying all of the due and owing post-termination commissions; Parkway insists that it is making all of the required commission payments.

Much of this dispute appears to center around the scope of the term "order" as used in the Agreement. The scope of that term is important because, as noted above, Alexander Associates is only entitled to commissions on post-termination sales by Parkway if those sales were made based upon an "order" dated prior to termination of the Agreement. The parties characterize the disputed issue this way: does "order" include "blanket purchase orders,"[1] or is "order" confined to "firm

---

[1] Generally speaking, a "blanket purchase order" is a document issued by a customer to a manufacturer that sets forth the terms governing any purchases that the customer makes on a going-forward basis.

releases"[2]? (As described below, the Court does not believe that Alexander Associates' right to commissions on post-termination turns on labels like "blanket purchase order" and "firm release," but the Court sets forth the parties' arguments that use those terms in order to provide background to the dispute.)

Alexander Associates contends that the term "order" includes a "blanket purchase order." (*See* Am. Compl. at ¶10, ECF #14 at Pg. ID 160.) According to Alexander Associates, because a blanket purchase order is an "order," it (Alexander Associates) is entitled to commissions on post-termination sales made by Parkway under the terms of a blanket purchase order so long as the blanket purchase order is dated prior to the termination of the Agreement.

Parkway disagrees. Parkway insists that the term "order" in the Agreement does not includes blanket purchase orders and, instead, is strictly limited to "firm release[s]." (Mot. to Dismiss, ECF #15 at Pg. ID 227.) According to Parkway, because the term "order" is limited to firm releases, Alexander Associates is entitled to commissions on sales made after the termination of the Agreement only if those sales resulted from a firm release dated prior to termination. Parkway rejects Alexander Associates' contention that it is entitled to commissions on post-

---

[2] Generally speaking, a "firm release" is a document issued by customer to a manufacturer in which the customer requests/directs shipment of a specific amount of product to be delivered on a particular schedule.

termination sales so long as the sales were made under the terms of a blanket purchase dated prior to the termination of the Agreement.

## B

Alexander Associates filed this action on February 13, 2017. (*See* Compl., ECF #1.) It amended the Complaint on September 11, 2017. (*See* Am. Compl., ECF #14.) The Amended Complaint contains three counts: one for breach of the Agreement (Count I), one for a judgment declaring that Parkway is liable for post-termination commissions under the Agreement as construed by Alexander Associates (Count II), and one for violation of Michigan's Sales Representatives Commission Act, Mich. Comp. Laws § 600.2691 (Count III, mis-labeled as Count VI).

Alexander Associates generally alleges that Parkway "has breached the Agreement by failing to pay [Alexander Associates] all of the post-termination sales commissions due under the Agreement…." (Am. Compl. at ¶17, ECF #14 at Pg. ID 162.) Alexander Associates also alleges that Parkway has failed to pay all commissions owing "in accordance with the industry standard and the custom and usage in the automotive industry." (*Id.*) Alexander Associates further alleges that its reading of the term "order" – *i.e.*, that the term includes blanket purchase orders – is the correct one and that Parkway's reading – *i.e.*, that the term is limited to firm releases – is incorrect. (*Id.* at ¶¶ 18-19, Pg. ID 162-63.)

Parkway has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Complaint in its entirety. (*See* Mot. to Dismiss, ECF #15.) The Court held a hearing on Parkway's motion on February 5, 2018.

**II**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *See id.* (citing *Twombly*, 550 U.S. at 556). When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to survive a motion to

dismiss. *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III

### A

As noted above, Parkway seeks dismissal of Alexander Associates' entire Amended Complaint. Parkway argues that the Court should reject Alexander Associates' claims because they all rely upon Alexander Associates' contention that the term "order" includes blanket purchase orders but, in fact, the term "order" is strictly limited to firm releases.

The Court declines to dismiss Alexander Associates' Amended Complaint on this basis. The Agreement contains neither the term "blanket purchase order" nor the term "firm releases," and the Court does not believe that Alexander Associates' right to post-termination commissions turns upon whether a particular document from a Parkway customer is a labeled as a "blanket purchase order" or a "firm release." Instead, the dispositive question with respect to Alexander Associates' right to post-termination commissions on a given sale is whether the sale was made pursuant to a communication from one of Parkway's customers (dated prior to termination of the Agreement) that satisfies the definition of the term "order" in the Agreement. And, critically, the Court cannot make that determination unless and until it carefully reviews each individual communication from a customer under

7

which Alexander Associates is claiming a commission in order to determine whether the communication amounts to an "order." None of the communications are attached to the Amended Complaint, and Parkway strenuously insists that this Court may not consider materials that are not appended to the Amended Complaint. (*See* Reply in Support of Mot. to Dismiss, ECF #17 at Pg. ID 396.) Under these circumstances, the Court concludes that it is not yet in a position to definitively determine whether Alexander Associates is entitled to the post-termination commissions it seeks. For that reason, the Court declines to dismiss Alexander Associates' claims in their entirety at this point.

**B**

Even if the communications from Parkway's customers were before the Court, the Court would still decline to dismiss the Amended Complaint because the Court cannot say with certainty at this point that the meaning of the term "order" in the Agreement is unambiguous. The Court acknowledges that the meaning of that term in the Agreement appears straightforward. As noted above, the term is specifically defined in the Agreement as "any commitment to purchase PARKWAY's products which calls for shipment to REPRESENTATIVE'S customers…." (Agreement at §5(e), ECF #14-2 at Pg. ID 171.) It would appear from this definition that an "order" is a communication in which a customer obligates itself to purchase a quantity of Parkway's products and directs Parkway to ship the products.

Alexander Associates counters that there may be a latent ambiguity with respect to the meaning of the term "order." "A latent ambiguity … is one that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." *City of Grosse Pointe Park v. Michigan Mun. Liab. & Prop. Pool*, 473 Mich. 188, 198 (2005) (quotations omitted). A latent ambiguity may be shown by, among other things, evidence of custom and practice in an industry. *See Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 842 F.3d 422, 427 (6th Cir. 2016) (applying Michigan law). Here, the Court understands Alexander Associates to argue that in the automotive and sales representative industries, the term "order" – *even when defined as it is in the Agreement* – is understood to include communications from customers in which the customer neither obligates itself to purchase products nor directs the shipment of products.

At this point (and having only the pleadings before it), the Court cannot say that Alexander Associates' latent ambiguity argument must fail as a matter of law. Ultimately, convincing the Court that a latent ambiguity exists may well be an uphill battle for Alexander Associates because, among other things, the latent ambiguity doctrine is bounded by "well defined limits," *id* (quotations omitted), and it is possible that those limits may preclude Alexander Associates' effort to demonstrate a latent ambiguity. Simply put, in the end, the Court may well conclude that there

9

is no latent ambiguity in the term "order" as used in the Agreement. But the Court believes that Alexander Associates is entitled to pursue its latent ambiguity argument for the time being.

## C

Furthermore (and in any event), the Court concludes that it would be improper to dismiss all of Alexander Associates' claims at this time because it is not clear that Alexander Associates' claims rest entirely upon its assertion that the term "order" includes blanket purchase orders. Alexander Associates *generally* alleges that Parkway has failed to pay all commissions due and owing under the Agreement. (*See* Am. Compl. at ¶17, ECF #14 at Pg. ID 162.) That allegation is not necessarily limited to commissions that Parkway refused to pay based upon its differing interpretation of the term "order." Therefore, because some portion of Alexander Associates' claims may rest on something other than the parties' dispute over the breadth of the term "order," it would not be appropriate for the Court to dismiss the claims in their entirety at this point.

## D

Finally, one last argument by Alexander Associates persuades the Court not to dismiss its Amended Complaint at this time. Alexander Associates contends that Parkway's proposed reading of the term "order" must be rejected because that reading would render nugatory the second sentence of Section 10 of the Agreement.

(*See* Resp. to Mot. to Dismiss, ECF #16 at Pg. ID 254.) At this point, the Court is not prepared to conclude that that argument must fail as a matter of law. The Court intends to re-visit that argument at the close of discovery and upon fuller briefing and oral argument by both parties.

IV

For the reasons stated above, **IT IS HEREBY ORDERED** that Parkway's motion to dismiss is **DENIED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: February 15, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 15, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764